# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UMAR HAYAT,
A220-647-471,

      Petitioner,

      v.

DAVID O'NEILL, Acting Field
Office Director of Enforcement and
Removal Operations, Philadelphia
Field Office, Immigration and
Customs Enforcement, et al.,

      Respondents.

CIVIL ACTION NO. 3:25-cv-02416

(SAPORITO, J.)

## <u>MEMORANDUM</u>

On December 15, 2025, the petitioner, appearing through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. In this petition, Umar Hayat, a native and citizen of Pakistan, challenges the legality of his pre-removal-order immigration detention without an individualized bond hearing. At the time of filing, Hayat was being held in the custody of United States Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility, located in Pike County, Pennsylvania.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Hayat initially entered the United States without inspection at or near Calexico, California, on or about November 18, 2021. Hayat was apprehended by Customs and Border Patrol shortly thereafter and detained until January 27 or 28, 2022, at which time he was released on his own recognizance, pursuant to 8 U.S.C. § 1226(a).[1] *See* Pet. Ex. A, Doc. 1-2, at 3. At the time of his release, Hayat was served with a Notice to Appear, DHS Form I-862, dated January 27, 2022, which declared him to be subject to removal as an "alien present in the United States who has not been admitted or paroled,"[2] and which directed him to appear for a hearing before an immigration judge in Philadelphia, Pennsylvania, at

---

[1] At the time of his initial release, Hayat was served with a Notice of Custody Determination, DHS Form I-286, dated January 27, 2022, and prepared by a deportation officer, which ordered him released on his own recognizance pursuant to "section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." Pet. Ex. A, Doc. 1-2, at 3. He was also served with an Interim Notice Authorizing Parole, dated January 28, 2022, which indicated that he had been paroled into the United States temporarily under 8 U.S.C. § 1182(d)(A)(5), which allows for discretionary parole into the United States "under such conditions as [DHS] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." Pet. Ex. A, Doc. 1-2, at 5. Hayat's initial release on parole appears to have been based on his expressed intention to apply for asylum.

[2] Notably, a box on the Notice for declaring him to be an "arriving alien" was *not* checked. Pet. Ex. B, Doc. 1-2, at 7.

a date and time to be determined.[3] Pet. Ex. B, Doc. 1-2, at 7.

On November 3, 2022, Hayat timely applied for asylum by filing a Form I-589, Application for Asylum with U.S. Citizenship and Immigration Services ("USCIS"), and he was granted a work permit. His asylum application has not yet been adjudicated. In the several years that he has been present in the United States, Hayat has lived a "productive and law-abiding life." *See* Pet. ¶ 6, Doc. 1, at 3.

In November 2025, an asylum officer served Hayat by mail with a superseding Notice to Appear, DHS Form I-862, dated November 6, 2025, which declared him to be subject to removal as an "alien present in the United States who has not been admitted or paroled,"[4] and which directed him to appear for a hearing before an immigration judge in Philadelphia, Pennsylvania, on January 5, 2027. Pet. Ex. C, Doc. 1-2, at 10.

---

[3] The date and time spaces on the form were filled in with "TBD" instead of an actual date and time. *See* Pet. Ex. B, Doc. 1-2, at 7. As a result, this initial notice to appear was apparently legally defective. *See Niz-Chavez v. Garland*, 593 U.S. 155, 160–72 (2021) (holding that, under 8 U.S.C. § 1229(a)(1)(G), "time and place information must be included in a notice to appear").

[4] Notably, a box on the Notice for declaring him to be an "arriving alien" was *not* checked. Pet. Ex. C, Doc. 1-2, at 10.

Hayat has complied with all directions and requirements of asylum and immigration officers since being released on his own recognizance. He was doing so when he reported to the Philadelphia ICE field office on December 1, 2025, for a routine check-in. Once there, he was taken into custody and detained by immigration authorities. Later, he was transferred to Pike County Correctional Facility, where he remains in civil immigration detention. He has been denied any opportunity to post bond or to be released on other conditions.

## II.    DISCUSSION

> Since the United States began restricting immigration into this country in the late 19th century, it has distinguished between those noncitizens seeking entry into the country and those already residing within it. Noncitizens "stopped at the boundary line" who have "gained no foothold in the United States" do not enjoy the same constitutional protections afforded to persons inside the United States. But once a noncitizen enters the United States, "the legal circumstance changes," for the constitutional right to due process applies to all "persons" within our nation's borders, "whether their presence here is lawful, unlawful, temporary, or permanent." This distinction between noncitizens who have entered and reside in the United States and those who have not yet entered "runs throughout immigration law."

*Quijada Cordoba v. Knight*, ___ F. Supp. 3d ____, 2025 WL 3228945, at *1 (D. Idaho Nov. 19, 2025) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925),

and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (citations omitted).

Consistent with this distinction, "[t]wo statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. § 1225 and 1226." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. Sept. 23, 2025), *appeal filed*, No. 25-7429 (9th Cir. Nov. 25, 2025). As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).

Under § 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as an 'applicant for admission.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). Applicants for admission may be detained pending removal under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) applies to aliens who (*A*) are arriving in the United States, *see* § 1225(b)(1)(A)(i) (the "arriving aliens provision"), or have been physically present in the United States for less than two years

- 5 -

without being admitted or paroled, *see* § 1225(b)(1)(A)(iii) (the "designation provision"),[5] *and* (*B*) are inadmissible either for misrepresenting a material fact while attempting to gain admission to the United States or for lacking proper immigration documentation. *See* 8 U.S.C. § 1225(b)(1)(A); *see also* § 1182(a)(6)(C) (inadmissibility based on misrepresentation); § 1182(a)(7) (inadmissibility for lack of documentation). For these aliens, § 1225(b)(1) provides for expedited removal proceedings without further hearing or review, unless the alien expresses a fear of persecution or an intent to apply for asylum, in which case the alien is subject to mandatory detention pending a final determination of credible fear of persecution and, if found not to have

---

[5] This so-called "designation provision" further limits this group of aliens subject to expedited removal proceedings to certain categories of aliens expressly designated by the Secretary of Homeland Security, *see* § 1225(b)(1)(a)(ii), but the current scope of that designation is "the full scope of statutory authority," and thus all aliens who have not been admitted or paroled into the United States and who have not been physically present in the United States continuously for the two-year period prior to determination of inadmissibility are subject to expedited removal under § 1225(b)(1). *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025); *see also Make The Rd. New York v. Wolf*, 962 F.3d 612, 619–20 (D.C. Cir. 2020) (providing a historic overview of groups designated under § 1225(b)(1)(a)(ii)); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62–64 (D.D.C. 2025) (same), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

such a fear, until removal. *See* § 1225(b)(1)(B). *See generally Make The Rd. New York v. Wolf,* 962 F.3d 612, 618–20 (D.C. Cir. 2020) (summarizing expedited removal provisions); *Rodriguez-Acurio v. Almodovar,* ___ F. Supp. 3d ____, 2025 WL 3314420, at *9–10 (E.D.N.Y. Nov. 28, 2025) (same); *Coal. for Humane Immigrant Rts. v. Noem,* 805 F. Supp. 3d 48, 59–64 (D.D.C. 2025) (same), *appeal filed,* No. 25-5289 (D.C. Cir. Aug. 11, 2025).

Section 1225(b)(2) is a "broader . . . catchall provision" that applies to other "applicants for admission" who are "seeking admission" to the United States.[6] *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings,* 583 U.S. at 287. Under § 1225(b)(2), an applicant for admission is placed into ordinary (not expedited) removal proceedings. *See* § 1225(b)(2)(A); *see also id.* § 1229a (describing ordinary removal proceedings before an immigration judge). With limited exceptions, however, an alien is subject to mandatory detention under § 1225(b)(2) while removal proceedings remain pending. *See* § 1225(b)(2)(A); *see also* § 1182(d)(5) (authorizing the Secretary of Homeland Security to grant humanitarian parole to aliens awaiting

---

[6] The statute expressly provides that § 1225(b)(2) does not apply to those to whom § 1225(b)(1) applies, as well as other categories not relevant here. *See* 8 U.S.C. § 1225(b)(2)(B).

removal proceedings); § 1225(b)(2)(C) (providing that aliens arriving on land from a foreign territory contiguous to the United States may be returned to that foreign territory pending removal proceedings, rather than be detained); *Quijada Cordoba*, 2025 WL 3228945, at \*1 ("Section 1225(b) mandates detention without bond hearings, except for narrow humanitarian parole.").

Meanwhile, as noted above, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Such aliens who are already present in the United States may be detained pending removal under two separate provisions: § 1226(a) and § 1226(c).

Section 1226(a) prescribes a discretionary detention framework for these aliens when subject to removal proceedings, providing that: "On a warrant issued by the Attorney General,[7] an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute further provides that

---

[7] This statutory authority to issue immigration arrest warrants has been delegated to a number of supervisory immigration officials listed in the applicable regulations. *See* 8 C.F.R. § 287.5(e)(2); *see also id.* §§ 236.1(b), 1236.1(b).

such an alien may be released on bond while removal proceedings remain pending. *Id.* § 1226(a)(2). The relevant implementing regulations provide that a § 1226(a) detainee may be released on bond upon showing "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Immigration authorities[8] are tasked with an initial bond or custody determination, *see id.* §§ 236.1(c)(8), 1236.1(c)(8), after which the alien may may request an individualized bond hearing before an immigration judge, *see id.* §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19 (setting out procedures for the review of bond determinations by immigration judges). *See generally Nielsen v. Preap*, 586 U.S. 392, 397 (2019) ("If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge (both exercising power delegated by the Secretary); and the alien may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.") (citations omitted). An adverse bond determination by the

---

[8] The same supervisory immigration officials authorized to issue arrest warrants. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

immigration judge can be appealed to the Board of Immigration Appeals. *See* 8 U.S.C. §§ 236.1(d)(3), 1236.1(d)(3). *See generally Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (summarizing § 1226(a) bond procedures).

Finally, "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. This subsection specifies certain criminal histories that require mandatory detention of aliens who would otherwise be eligible for a bond hearing under § 1226(a). *See* 8 U.S.C. § 1226(c). Such criminal aliens may only be released under very narrow circumstances involving a determination by the Attorney General that the alien's release is necessary for witness-protection purposes and the alien does not pose a flight risk or a danger to the community. *See id.* § 1226(c)(4); *see also Jennings*, 583 U.S. at 289.

The petitioner in this case, Umar Hayat, has been detained by immigration authorities without a bond determination pending disposition of his ordinary, § 1229a removal proceedings.[9] In his petition,

---

[9] The parties appear to agree that the petitioner has been putatively detained without an opportunity for a bond determination pursuant to
*(continued on next page)*

Hayat argues that, because he was detained within the interior of the United States, he is not properly subject to mandatory pre-removal-order detention under § 1225(b)(2). Rather, he contends that he may only be properly detained under § 1226(a), which requires that he be given an opportunity for an individualized bond hearing. Hayat further asserts two claims under the Administrative Procedures Act ("APA"): (a) a claim that the agency has failed to follow its own bond regulations; and (b) a claim that, to the extent that he had been paroled into the United States under 8 U.S.C. § 1182(d)(A)(5) rather than conditionally paroled under 8 U.S.C. § 1226(a), the revocation of his parole prior to adjudication of his asylum application was arbitrary and capricious.[10] In addition to these statutory arguments, Hayat argues that his pre-removal detention without an opportunity to be considered for release on bond violates his

---

§ 1225(b)(2). The respondent has identified no other basis for his detention. Moreover, the petitioner has not been placed in expedited removal proceedings, as would be expected for a § 1225(b)(1) detainee, he has no criminal record to qualify him for mandatory detention under § 1226(c), and immigration officials have refused to give him a bond hearing, as required under § 1226(a).

[10] Having granted relief on the basis of the petitioner's primary statutory claim—that his detention is pursuant to § 1226(a) rather than § 1225(b)(2)—we decline to reach the petitioner's alternative arguments that his detention violates the APA.

Fifth Amendment due process rights.[11]

The respondent raises several arguments in opposition to the petition. First, the respondent argues that various jurisdiction-stripping provisions of the Immigration and Naturalization Act ("INA") prevent this court from considering the petition before us. Second, the respondent argues that the petitioner lacks standing to bring his APA claims, which expressly provides that it is available only for final agency action "for which there is no other adequate remedy in court," 5 U.S.C. § 704.[12] Third, the respondent argues that § 1225(b)(2) does properly apply to the petitioner, and that it prescribes mandatory detention. Finally, the respondent argues that applying § 1225(b)(2) here comports with due process.[13]

### A. Jurisdiction

We necessarily turn first to the question of this courts' jurisdiction.

---

[11] Having found a statutory basis for relief, we do not reach the constitutional issues raised by the petitioner as alternative grounds for relief. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of defending them.").

[12] *See supra* note 10.

[13] *See supra* note 11.

The respondent initially argued that the petitioner's habeas claims are jurisdictionally barred under 8 U.S.C. § 1252(g), § 1252(b)(9), and § 1252(a), statutory provisions that strip federal district courts of jurisdiction to consider certain immigration-related habeas claims. The respondent, however, has withdrawn that argument and conceded that this court has subject matter jurisdiction to rule on the merits of the petition. *See* Doc. 8. The court agrees that it may properly exercise jurisdiction over this matter.

### 1. Section 1252(g)

Section 1252(g) provides that, "[e]xcept as provided in this section and notwithstanding any other provision of law . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The language of this statutory provision, however, does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings*, 583 U.S. at 294. Rather, the Supreme Court has interpreted § 1252(g) to apply to "just those three specific actions

themselves." *Id.* at 294; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("[Section 1252(g)] applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"). Here, Hayat does not challenge the commencement of his removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. He contests only the legality of his detention without a bond hearing. Accordingly, § 1252(g) does not bar this court from exercising jurisdiction over Hayat's habeas petition.

### 2. Section 1252(b)(9)

Section 1252(b)(9) is commonly described as a "zipper clause" because it channels judicial review of all decisions and actions arising from removal proceedings into a single petition for review ("PFR") from a final order of removal. *See Khalil v. President*, 164 F.4th 259, 275 (3d Cir. 2026) ("Section 1252(b)(9) works as a 'zipper' clause, channeling 'most claims that even relate to removal' into PFRs. It ensures that petitioners get only one bite at the apple.") (citations omitted). Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the

United States . . . shall be available only in judicial review of a final order [of removal]," and that "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision . . . to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). "Because judicial review of a final order of removal is available only in the court of appeals, district courts cannot review these 'arising from' claims either." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020).

> In *E.O.H.C.*, the Third Circuit
>
>> read the "arising from" phrase to require courts to "ask: If not now, when? If the answer would otherwise be never, then § 1252(b)(9) poses no jurisdictional bar." The "point" of that subsection, [the *E.O.H.C.* court] explained, "is to channel claims into a single PFR, not to bar claims that do not fit within that process." So when aliens can get review later—by litigating before an immigration judge, the Board of Immigration Appeals, and then by way of a PFR to a court of appeals—they must do so. District courts play little if any role in that sequence. But when aliens raise claims that courts cannot "meaningfully" review through the PFR process, those claims do not "arise from" the "actions taken" or "proceedings brought" to remove them.

*Khalil*, 164 F.4th at 273–74 (citations and brackets omitted). In *Khalil*, the Third Circuit further clarified that such "[a] now-or-never claim must

- 15 -

raise legal or factual *questions* that a court of appeals will not later be able to review meaningfully on a PFR. It is not enough to assert an injury that cannot be remedied later." *Id.* at 274–75; *see also id.* at 275 ("[T]o avoid getting channeled to a PFR, a claim must raise now-or-never *questions*, not just now-or-never harms.").

In *Khalil*, the petitioner brought a detention-specific "punitive detention" claim, which did not challenge the length or conditions of his detention, but instead he argued that his detention was "impermissible retaliation and unlawful because it depend[ed] on [an] unconstitutionally vague foreign policy ground." *Id.* at 277. These arguments against detention were "identical to his arguments against removal." *Id.* at 276. Because his detention-specific claim "just repackage[d] his challenges to his removal," it raised questions that the court of appeals could meaningfully review in the PFR context, and the district court lacked subject matter jurisdiction to decide that claim under the "zipper clause," § 1252(b)(9). *See id.* at 277.

Unlike the petitioner in *Khalil*, Hayat does not argue that his continued detention is unlawful because the Government's removal action itself is invalid. Indeed, Hayat does not seek review of a final order

of removal, he does not challenge the decision to initiate removal proceedings against him, and he does not challenge the decision to initially detain him. Rather, he challenges only his continued detention *without a bond hearing*, to which he contends he is entitled under 8 U.S.C. § 1226(a). His habeas petition presents a proper now-or-never claim, independent of and wholly collateral to the removal process, which raises no legal or factual questions that could be meaningfully reviewed by the court of appeals in the PFR context. *See Jennings*, 583 U.S. at 294–95 (plurality opinion) (finding that § 1252(b)(9) did not present a jurisdictional bar to claims challenging prolonged detention without an individualized bond hearing); *Preap*, 586 U.S. at 402 (plurality opinion) (same); *see also E.O.H.C.*, 950 F.3d at 186 ("[Section 1252(b)(9)] does not reach claims that are independent of, or wholly collateral to, the removal process . . . .") (internal quotation marks omitted).

Accordingly, § 1252(b)(9) does not bar this court from exercising jurisdiction over Hayat's habeas petition.

### 3. Section 1252(a)

Section 1252(a)(2)(B)(ii) precludes a federal district court from exercising jurisdiction to review decisions by the Attorney General or the

Secretary of Homeland Security "the authority for which is specified under this subchapter to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). But Hayat does not challenge a *discretionary* decision. Rather, he challenges the statutory authority to detain him *without a bond hearing*. The scope of the government's statutory detention authority is "not a matter of discretion." *Zadvydas*, 533 U.S. at 688; *see also Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025). Accordingly, § 1252(a)(2)(B)(ii) does not bar this court from exercising jurisdiction over Hayat's habeas petition.

### B. Merits

We turn then to the merits of the petition. The respondent purports to have detained Hayat pursuant to 8 U.S.C. § 1225(b)(2), which provides for mandatory detention without the opportunity for release on bond. The petitioner, however, contends that he could only be properly detained under 8 U.S.C. § 1226(a), and under that statute, he is entitled to an individualized bond hearing.

"[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking

admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)), *appeal dismissed*, No. 25-1902 (1st Cir. Dec. 23, 2025); *see also Kashranov*, 2025 WL 3188399, at *6 (citing *Martinez*); *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025) (citing *Martinez* and *Kashranov*); *Carrero Romero v. Lowe*, No. 4:26-CV-00009, 2026 WL 296215, at *4 (M.D. Pa. Feb. 4, 2026) (citing *Ramirez-Montoya*). Significantly, "Section 1225(b)(2)(A) applies only to an alien who is *both* an applicant for admission and 'seeking admission.'" *Kashranov*, 2025 WL 3188399, at *6 (emphasis in original); *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov* and *Bethancourt Soto v. Soto*, ___ F. Supp., 3d ____, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025)); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*).

Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Meanwhile, the phrase "seeking admission" is not defined in § 1225, and the courts of this circuit have construed the plain language of "seeking admission" to describe

"active and ongoing conduct—physically attempting to come into the United States, typically at a border or a port of entry." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (citing *Ramirez-Montoya*). "This reading preserves the distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase carries independent meaning." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*). It also comports with the Supreme Court's finding in *Jennings* that "§ 1225(b) applies primarily to aliens seeking entry into the United States." *Jennings*, 583 U.S. at 297; *Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Jennings*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings* and *Ramirez-Montoya*). "In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country." *Carrero Romero*, 2026 WL 296215, at *4; *see also Kashranov*, 2025 WL 3188399, at *7 (considering the statutory context of § 1225(b)(2) and concluding that this provision "contemplates

inspection and detention at or immediately following border crossing").

By contrast, as the Supreme Court has previously recognized, "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and it "permits the Attorney General to release those aliens on bond." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*); *Ramirez-Montoya*, 2025 WL 3709045, at *5 ("Unlike § 1225(b)(2)(A), § 1226(a) provides for bond or conditional parole.") (citing 8 U.S.C. § 1226(a)(2)). "[U]nder Section 1226(a) and its implementing regulations, [an alien discretionarily detained pending removal proceedings] is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community[] or . . . that he is a flight risk, if it seeks to continue detaining him." *Gomes v. Hyde*, 804 F. Supp. 3d

265, 277 (D. Mass. 2025);[14] *see also Y.Z. v. Soto*, ___ F. Supp. 3d ____, 2025 WL 3564652, at \*2 (D.N.J. Dec. 12, 2025) ("Noncitizens who are arrested after having lived in the United States for a while do not generally have to be detained. They are instead entitled to a bond hearing before an immigration court.") (citing *Gomes*) (citations and footnote omitted). *See generally Carrero Romero*, 2026 WL 296215, at \*4 ("[I]f an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225. If they are arrested after having already entered the country, they are subject to detention under

---

[14] We note that, applying First Circuit precedent, the *Gomes* court stated that the government may prove that an alien is a danger to the community by clear and convincing evidence, or that he is a flight risk by the lesser preponderance-of-the-evidence standard. *See Gomes*, 804 F. Supp. 3d at 277 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)). The Third Circuit, however, has held that the government must prove either dangerousness *or* flight risk by clear and convincing evidence. *See German Santos v. Warden*, 965 F.3d 203, 213–14 (3d Cir. 2020) ("When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence."); *see also Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 333 n.9 (3d Cir. 2021) ("[I]t is a 'settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government' to a 'clear and convincing evidence' standard in the context of civil detention . . . .") (quoting *German Santos*); *Luciano-Jimenez v. Doll*, 547 F. Supp. 3d 462, 465 (M.D. Pa. 2021) (quoting *German Santos*).

§ 1226 and are entitled to a bond hearing.").

Here, § 1226(a), not § 1225(b)(2)(A), applies to the detention of Hayat. We find that Hayat is no longer seeking admission into the United States—at the time of his arrest and detention, he was not actively attempting to come into the United States at a border or port of entry. Rather, he is already here, having resided within the United States for an extended period of time. *See Kashranov*, 2025 WL 3188399, at *1 (finding that petitioner who lived in the United States for almost two years was not "seeking admission" but "already here"); *Ramirez-Montoya*, 2025 WL 3709045, at *5 (citing *Kashranov*). Thus, Hayat may only be properly detained pursuant to § 1226(a), and therefore he is entitled to a bond hearing. *See Carrero Romero*, 2026 WL 296215, at *5. *See generally Patel v. O'Neill*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 (M.D. Pa. Dec. 8, 2025) ("The overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention

pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing."); *id.* at \*4 & n.7 (collecting Third Circuit district court cases).

## III.   CONCLUSION

For the foregoing reasons, the court concludes that the petitioner is currently detained pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2), and thus he is entitled to an individualized bond hearing. Accordingly, the petition will be granted, and the government will be ordered to provide the petitioner with an individualized bond hearing within twenty-one days or to release him from custody. The petitioner's motion for preliminary injunctive relief will be denied as moot.

An appropriate order follows.

Dated: February 27, 2026             *s/Joseph F. Saporito, Jr.*
                                     JOSEPH F. SAPORITO, JR.
                                     United States District Judge